# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, )<br>    Plaintiff, )<br>v. )<br>John V. Wigglesworth, )<br>    Defendant. )<br>_____ ) | No. CR 08-1376-TUC-FRZ (JM)<br><br>**REPORT AND RECOMMENDATION** |

On October 9, 2008, this matter was referred to Magistrate Judge Jacqueline Marshall for pretrial matters. Defendant John Wigglesworth's Motion to Suppress was argued before the Magistrate Judge on April 28, 2009, and on May 4, 2010, the Magistrate Judge recommended that the District Court deny the motion. On May 29, 2009, the District Court adopted the Report and Recommendation.

On April 19 and 20, 2010, after numerous trial continuances, Defendant filed the following additional pretrial motions: Motion to Reconsider Motion to Suppress and Request for Franks Hearing (Doc. 178); Motion to Preclude Nicole Thomas from Testifying at Trial (Conflict of Interest) (Doc. 179): Motion to Sever Count VI (Doc. 180); and Motion to Dismiss Counts Two, Three and Four of the Indictment (Multiplicity) (Doc. 181). On April 27, 2010, the District Court referred the four motions to the Magistrate Judge with directions to conduct a hearing on Documents 178 and 179 and issue one Report and Recommendation addressing all four motions (Docs. 178-181).

On June 3, 2010, the Magistrate Judge heard argument on Docs. 178 and 179. Defendant's Motion to Preclude Nicole Thomas from Testifying at Trial (Conflict of Interest)

(Doc. 179) was taken under advisement and Defendant's Motion to Reconsider Motion to Suppress and Request for Franks Hearing (Doc. 178) was granted in part in that the Magistrate Judge found that a *Franks* hearing was necessary to fully resolve the Motion to Reconsider. An evidentiary hearing was conducted on July 6, 2010 before the Magistrate Judge.[1] Detective Hart testified at the hearing. Defendant was present and represented by counsel. Having considered the motions, the Magistrate Judge makes the following recommendations.

**I.     Motion to Reconsider Motion to Suppress**

On August 12, 2008, at 8:45 p.m., Detective Hart, a Tucson Police Department detective for over 14 years, called Pima County Superior Court Judge Bernini and requested that a telephonic search warrant be issued to search the premises located at 1035 East 28th Street in Pima County. Detective Hart described the residence to be searched and stated that he was investigating the crime of unlawful possession of a narcotic drug for sale. With respect to the property to be seized, Detective Hart stated that he would be searching for narcotic drugs, drug related moneys, records and ledgers relating to the distribution of drugs, paraphernalia, firearms and any other fruits, or instrumentalities or evidence of the crime of unlawful possession of a narcotic drug for sale. In support of the warrant, Detective Hart stated in relevant part:

> Within the last twenty-four hours a reliable confidential source went to the residence at 1035 East 28 [th] to purchase crack cocaine. In the residence the informant observed a subject in the front room of the house with several ounces of crack cocaine. The informant entered the house with our money and returned from the house (Chirp noise) with the crack cocaine. Your Honor, I believe it's necessary for the, the pardon me, since this evidence after 10:00 p.m. And before 6:30 a.m. because the time is now 21 or 2050 hours ah, and the warrant may possibly not be served before 10:00 p.m. tonight for the safety of the SWAT officers to conduct their briefing. And also because of the crack cocaine involved is an easily moved substance and if left in place longer than that it may be destroyed or moved prior to the arrival of the officers to served the search warrant.

---

[1] July 6, 2010, was the earliest date that both attorneys and the Government's witness were all available to attend. Trial in this matter is scheduled for July 27, 2010.

1 | Docket No. 33, p. 21:1-12.

> Okay your Honor. Reference that warrant we'd like to request that warrant be a "no knock" warrant based on the ah, the, the way the crack trade is conducted and the weapons that are often, often involved for the saving of the evidence and the protection of the officers serving the warrant we'd like to request a "no knock" warrant.

*Id*., p. 23: 7-11.

Based on Detective Hart's sworn statement, Judge Bernini made a finding of probable cause and issued the search warrant. Judge Bernini authorized the warrant as a nighttime, "no-knock" search. The warrant was executed at 10:53 p.m.

In his Motion to Reconsider, Defendant raises concerns that Detective Hart did not have first-hand knowledge of the information he conveyed to Judge Bernini. Defendant's concerns are largely based on the police report prepared by Detective's Hart the day after the execution of the search warrant. In that report, which is attached as Exhibit A to Defendant's Motion for Reconsideration, Detective Hart indicates that he was involved in an investigation of narcotics activity using a confidential informant ("CI"). However, rather than indicating that he personally met with the CI prior to the investigation, Detective Hart states that "agents" met with him and that "an undercover officer" drove the informant to the house where the buy was to occur. Additionally, Defendant argues that Detective Hart's lack of personal knowledge of the information contained in the warrant application is illustrated by his inaccurate description of the fence in front of the target property as being constructed with "tin corrugated panels."

At the hearing, Detective Hart clarified his personal involvement in the investigation. During the afternoon of August 12, 2008, Detective Hart met with the CI at the U.S. Post Service station on Cherrybell Stravenue. Also present was Detective Bynum and they were later joined by an undercover officer. During the meeting, Detective Hart searched the CI and provided him with approximately $175 in "buy money." The CI then placed a call on his cell phone to the Defendant. Detective Hart only heard the CI's side of the conversation.

After the call was made, the CI was driven by the undercover officer to a residence located at 1035 East 28th Street in Tucson and parked directly in front of the house. Detectives Hart and Bynum followed in a separate vehicle and parked a block or two east of the residence. Hart noticed that the gate to the property was open and a Cadillac in the driveway. Hart then watched as the CI entered the property, but could not see him enter the house. The CI spent "several minutes" inside the residence then returned to the undercover officer's vehicle. They all then returned to the post office, where the CI was again searched, gave Hart the crack cocaine he had purchased and then talked about what had happened inside the residence. The CI indicated that when he went into the residence, he observed the Defendant and other individuals in the house and purchased crack cocaine, which was on a table. Based on this information, Hart sought and obtained the warrant in question.

The Supreme Court has held that "[i]n determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out." *Elkins v. United States*, 364 U.S. 206, 223-24 (1960). Here, the Defendant raises the question of whether the information Hart provided in support of the application for the warrant was within his personal knowledge. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme court found that a defendant is entitled to an evidentiary hearing to examine the contents of a warrant application if he makes an offer of proof of deliberate falsehood or reckless disregard for the truth in the application and the court concludes that the challenged information was necessary to a finding of probable cause. *Id.* at 171-72. Here, Defendant satisfied the requirements for a hearing by pointing out statements in Detective Hart's report suggesting that the information might not have been within his personal knowledge.

*Franks* illustrates the importance of the disclosure of whether the information in a statement or affidavit for a warrant is or is not within the personal knowledge of the officer. In *Franks*, the officer's affidavit stated that the officer hd personally interviewed the

informants whose information was included in the warrant, when in fact none of the informants had spoken to the officer. 438 U.S. at 158. Based on the testimony offered at the *Franks* hearing in this case, it is apparent that the information offered to Judge Bernini was within Hart's personal knowledge and the one potential error in the application was not made in deliberate or reckless disregard of the truth.

Detective Hart's testimony established that he personally met with and searched the CI both before and after the buy made at 1035 East 28th. Thus, he was one of the "agents" he described in his report. *See* Exhibit 9 (Agent Hart's report). It was within Detective Hart's personal knowledge that the CI had no money or narcotics at the time he was searched. Similarly, Detective Hart was not giving the false impression of the extent of his involvement when he indicated that an undercover officer drove the CI to the residence and that the informant observed other narcotics in the residence. He was directly aware of these facts because he followed the undercover officer and the CI to the resident and then personally spoke with the CI after the buy was completed.

The only piece of information offered by Detective Hart that may have been inaccurate was whether the gate in front of 1035 E. 28th Street was corrugated or flat. In both his statement to Judge Bernini and his testimony at the hearing before this Court, Hart indicated that the gate was in fact corrugated. A photograph of the gate was not included in the photographs offered at the hearing, but even if it were, the Court would not conclude that this potentially inaccurate description undermines that validity of the warrant. Agent Hart was familiar with the neighborhood in question and, other than the gate, provided accurate information about the residence. Moreover, if the description of the gate were excised from his statement to Judge Bernini, the warrant would nevertheless remain valid.

**II.      Motion to Preclude Nicole Thomas from Testifying at Trial (Conflict of Interest)**

Defendant Wigglesworth moves for an order precluding co-defendant Nicole Thomas from testifying against him because her counsel, Brick Storts, represented Defendant Wigglesworth in Rule 32 proceedings stemming from a 1994 conviction. Storts, who is

- 5 -

joined by the Government, contends that he did not represent Wigglesworth and, even if he did, possesses only public information that could be of no harm to Wigglesworth.

The attorney-client relationship is created and controlled by state law. *Evans v. Raines*, 800 F.2d 884, 888 n. 4 (9th Cir. 1986). In Arizona, an attorney-client relationship arises when the client manifests to a lawyer an intent that the lawyer provide legal services. *Paradigm Ins. Co. V. Langerman Law Offices*, 200 Ariz. 146, 148-49 (2001). The would-be client's "belief that [the lawyer] was their attorney" is crucial to the existence of an attorney-client relationship, so long as that belief is "objectively reasonable." *In re Pappas*, 159 Ariz. 516, 522 (1988). *See also*, Restatement (Third) of the Law Governing Lawyers § 14 (providing similar guidelines).

In 1994, Wigglesworth was convicted in Pima County Superior Court Case No. CR-43575 (Possession of a Narcotic Drug (Cocaine) for Sale). By notice dated July 9, 1996, Kevin Finn was appointed to represent Wigglesworth in his Rule 32 proceeding. Def.'s Mot. Preclude, Ex. B., ECF No. 179. Although Storts contends that Finn was Wigglesworth's sole counsel in the Rule 32 proceedings, the record presented by Wigglesworth establishes that was not the case. Wigglesworth contends that Storts was the only lawyer he conferred with regarding the preparation of the petition. Def.'s Reply, Ex. B., ECF No. 212. This assertion is bolstered by the Affidavit of the Arizona Department of Corrections Custodian of Records, and the supporting records, which reflect that from January 1996 through December 1997, Wigglesworth was not visited by Finn, but was seen by Storts on November 8, 1996. *Id.*, Ex. E.

Even putting aside the assertion that Storts prepared the Rule 32 petition, the Court finds that Storts, at a minimum, acted as co-counsel for Wigglesworth in the Rule 32 proceedings following the 1994 conviction. This is not a situation where a lawyer meets with a potential client about a potential civil claim which the lawyer may or may not undertake. Here, Storts met with Wigglesworth while he was incarcerated. Presumably, the meeting was specifically related to legal claims Wigglesworth might be able to raise in his

Rule 32 proceedings. Given these circumstances, it was objectively reasonable for Wigglesworth to believe that Storts was his attorney in the matter. There is nothing in the record to suggest otherwise. Significantly, in filing his second Notice of Rule 32 in 2001, Wigglesworth indicated that Storts represented him in his first Rule 32 proceeding. Def.'s Reply to Government, Ex. F., ECF Doc. 212.

Having concluded that Storts did in fact previously represent Wigglesworth, the impact of that representation must be evaluated. Wigglesworth requests that Storts' client, Nicole Thomas, be precluded from testifying. On the other hand, Storts argues that no actual conflict exists and, therefore, the Court should take no action in either removing him as counsel or precluding his client from testifying.

Criminal defendants have a constitutional right to hire counsel of their choice. *See* U.S. Const. Amend. VI. The right, however, is not absolute and "may be abridged to serve some compelling purpose. A criminal defendant's exercise of this right cannot unduly hinder the fair, efficient and orderly administration of justice." *United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002). In support of their positions, both parties cite to ER 1.9, Ariz. R. Sup. Ct. 42, which in pertinent part provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

As the matter at hand obviously is not the same matter in which Storts represented Wigglesworth, ti is a case of successive representation. For a conflict to exist in a case of successive representation, the prohibitions of ER 1.9 are to be invoked if the matters are "substantially related" or if the attorney "reveals privileged communications of the former client or otherwise divides his loyalties." *Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir. 1988) (citations omitted). Matters are "substantially related" under the rule "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior

representation would materially advance the client's position in the subsequent matter." ER 1.9, Ariz. R. Sup. Ct. 42, Cmt. 3.

As the matter now pending before the Court does not involve the same transaction or legal dispute as the matter for which Storts represented Wigglesworth, The Court must evaluate whether there exists a substantial risk that Storts could use confidential information gained from Wigglesworth to advance the interests of his current client. Storts represented Wigglesworth only in relation to the first Rule 32 petition filed in CR-43575. Storts indicates that he has no recollection of "ever meeting, talking, or corresponding with Defendant Wigglesworth . . . ." Resp. to Mtn. To Preclude 5, ECF No. 190. Storts also points out that the petition involved a technical argument related to sentencing. An examination of the petition bears this out and shows that the arguments raised in the petition required little factual support and were of an almost exclusively legal nature. *Id*., Ex. B. Moreover, the information normally obtained and necessary to support the argument raised in the petition would not be confidential factual information. The information relied upon in the petition had previously been disclosed during Wigglesworth's trial and appeal. "Information that has been disclosed to the public ordinarily will not be disqualifying." ER 1.9, Ariz. R. Sup. Ct. 42, Cmt. 3.

Although the Court recognizes that Wigglesworth is not required to reveal what confidential information he provided Storts which now might be used in this matter, the Court is hard-pressed to identify confidential factual information that would have mattered given the arguments raised in the Rule 32 petition. A conclusion about the likely possession by the lawyer of such information "may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services. *Id*. The nature of the services rendered here suggest that Storts would have gleaned little information, if any, in his representation of Wigglesworth that would now accrue to the benefit of his current client. Given these considerations, the

Court recommends that Storts not be disqualified from representing Nicole Thomas and that she not be precluded from testifying in this matter.

**III.    Motion to Sever Count VI**

In count six of the indictment, the government alleges that Defendant Wigglesworth violated 18 U.S.C. §§ 922(g)(1) and 924(e)(1) as a felon in possession of a firearm. The underlying felonies relied on in the indictment are the 1994 possession conviction in Pima County, along with a 1990 drug conviction in Oregon and a 1984 robbery conviction in Pima County. Defendant argues that prejudice will result from a single trial because the jury will be permitted to hear evidence of his prior convictions and will be unable to restrict its consideration of the convictions only to the firearm charge. The government contends severance is not proper because all of the counts are connected and because notice has been provided of the government's intent to introduce the convictions under Rule 404(b), Fed.R.Evid.

The outcome of the motion to sever count 6 of the indictment is largely dependent upon the District Court's determination of the admissibility of the prior convictions under Rule 404(b), Fed.R.Evid. The District Court has scheduled a hearing on the issue of whether the convictions will be admitted as evidence in support of the drug charges. In *United States v. Lewis*, 787 F.2d 1318, *as amended by* 798 F.2d 1250 (1986), the Ninth Circuit recognized that there is "'a high risk of undue prejudice whenever, as in this case, joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible.'" *Id*. at 1322 (quoting *United States v. Daniels*, 770 F.2d 1111 (D.C. Cir. 1985)). If Wigglesworth's prior convictions are determined to be admissible in relation to the drug counts, no prejudice will result and the possession charges need not be severed. However, if determined to be inadmissible except in relation to the charges that he was a felon in possession of a firearm, it almost goes without saying that he will suffer prejudice in relation to the drug charges.

Should the prior convictions be admitted only as to the felon in possession count, the remedy is not necessarily severance. As the government notes, in *United States v. Nguyen*, 88 F.3d 812 (9th Cir. 1996), any prejudice can be overcome by the bifurcation of the trial. *Id*. at 815. The court was skeptical of the efficacy of instructions cautioning the jury to compartmentalize the evidence pertinent to the gun possession counts. *Id*. The court feared that such a procedure would allow a jury to convict because the defendant was a "'bad guy'" or because "'he committed a crime before and probably did this one too.'" *Id*. Thus, if the District Court rules the prior convictions inadmissible in relation to the drug charges, severance or bifurcation is warranted.

## IV. Motion to Dismiss Counts Two, Three and Four of the Indictment (Multiplicity)

Defendant Wigglesworth's motion to dismiss alleges that the indictment in this case is multiplicitous. The motion seeks dismissal of the charges of possession with intent to distribute alleged in counts two, three and four of the six count indictment. The government asserts that the counts are not multiplicitous as each of the charges requires the finding of a separate fact by the jury. Defendant's argument was rejected by the Ninth Circuit in *United States v. Vargas-Castillo*, 329 F.3d 715 (9th Cir. 2003), and the Court therefore recommends the motion be denied.

In *Vargas-Castillo*, the defendant was indicted for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1), and for importation of cocaine and importation of marijuana, both in violation of 21 U.S.C. § 952 and 960. *Id*. at 719. The court noted that an indictment is not multiplicitous when "each separately violated statutory provision requires proof of an additional fact which the other does not." *Id*. (citing *United States v. McKittrick*, 142 F.3d 1170, 1176 (9th Cir. 1998) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932))). Then, after reciting the elements of each offense in question, the court concluded, *inter alia*, that each separate violation of 21 U.S.C. § 841(a)(1), the possession of marijuana and

- 10 -

cocaine with the intent to distribute, required the proof of an additional fact and therefore satisfied *McKittrick.*

Here, counts two, three and four allege that Wigglesworth violated 21 U.S.C. § 841(a)(1) by possessing with the intent to distribute three separate controlled substances: cocaine base, cocaine, and marijuana. Such allegations were deemed not to be multiplicitous in *Vargas-Castillo.* Defendant recognizes this result, but suggests that some of the cases the Ninth Circuit relied on in reaching the result have been called into question. Def.'s Notice of Contrary Authority 2, ECF No. 188. However, Defendant has not cited, and the Court has not found, any authority suggesting the Ninth Circuit has reevaluated the conclusions reached in *Vargas-Castillo*.

**IV. RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE**

Based on the foregoing, and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2), Rules of Practice of the United States District Court, District of Arizona, THE MAGISTRATE JUDGE RECOMMENDS that the District Court, after an independent review of the record:

1. **Deny** the Motion to Reconsider Motion to Suppress (Doc. 178);
2. **Deny** the Motion to Preclude Nicole Thomas from Testifying at Trial (Conflict of Interest) (Doc. 179);
3. **Deny in part and grant in part** the Motion to Sever Count VI (Doc. 180); and
4. **Deny** the Motion to Dismiss Counts Two, Three and Four of the Indictment (Multiplicity) (Doc. 181)

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. However, the parties shall have **ten (10) days** from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. If any objections are filed, this action should be designated case

number: **CV 08-1376-TUC-FRZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

**DATED this 12th day of July, 2010.**

*Jacqueline Marshall*
Jacqueline Marshall
United States Magistrate Judge